1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLACK CHANG & HAMILL LLP
Bradford J. Black (SBN 252031)
bblack@bchllp.com
Peter H. Chang (SBN 241467)
pchang@bchllp.com
Andrew G. Hamill (SBN 251156)
ahamill@bchllp.com
333 Bush Street, Suite 2250
San Francisco, California 94104
Tel:      415-813-6210
Fax:     415-813-6222

*Attorneys for Defendant*
*Round Rock Research LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ASUSTEK COMPUTER INC.,<br>ASUS COMPUTER INTERNATIONAL,<br>INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ROUND ROCK RESEARCH, LLC,<br>AMERICAN MEGATRENDS INC.,<br>SAMSUNG ELECTRONICS CO., LTD.<br><br>Defendants. | Case No. 4:11-cv-6636-DMR<br><br>**ROUND ROCK RESEARCH'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DECLARTORY JUDGMENT OR, IN THE ALTERATIVE, TO TRANSFER**<br><br>Date:    March 22, 2012<br>Time:   11:00 am<br>Judge:  Hon. Donna M. Ryu<br>Courtroom #4, 3rd Floor |

ROUND   ROCK   RESEARCH'S   MOTION   TO
DISMISS    PLAINTIFFS'   COMPLAINT    FOR
DECLARTORY   JUDGMENT   OR,   IN   THE
ALTERATIVE, TO TRANSFER

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................ 2

III.    ROUND ROCK IS NOT SUBJECT TO PERSONAL JURISDICTION IN
        CALIFORNIA. ............................................................................................. 5

    A.      Legal Standards.................................................................................... 5

    B.      Round Rock Is Not Subject To Specific Personal Jurisdiction In California. ........ 7

    C.      Round Rock Is Not Subject To General Personal Jurisdiction In California. ........ 8

    D.      Third-Party Activities In The District Cannot Be Imputed To Round Rock And, In
            Any Event, Are Not Sufficient To Confer General Or Specific Jurisdiction Over
            Round Rock. .................................................................................... 10

        1.      Third Party IPValue's Contacts With California Do Not Subject Round Rock
                To General Personal Jurisdiction In California. ............................... 10

        2.      IPValue's Alleged Activities Do Not Support Specific Jurisdiction............... 14

IV.     THE COURT SHOULD DISMISS THIS ACTION UNDER THE FIRST-TO-FILE
        RULE. ..................................................................................................... 15

    A.      Legal Standards................................................................................... 15

    B.      All Of The First-To-File Factors Favor Dismissing This Action Or Transferring It
            To Delaware....................................................................................... 16

    C.      Alternatively, This Case Should Be Transferred To The District Of Delaware Or
            Stayed To Properly Allow The First-Filed Court To Resolve Venue Disputes. .. 18

        1.      The Plaintiffs Could Have Filed Declaratory Judgment Claims In The District
                Of Delaware. ................................................................................. 19

        2.      Judicial Economy Favors Transfer To Delaware. ........................................... 20

        3.      The Convenience Of Witnesses, Particularly Non-Party Witnesses, Strongly
                Favors Transferring This Action To Delaware................................. 21

    D.      At A Minimum, This Court Should Stay This Action To Allow The Delaware
            Court To Resolve Venue Issues. ........................................................... 21

V.      CONCLUSION........................................................................................... 22

ROUND ROCK RESEARCH'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT FOR DECLARTORY
JUDGMENT OR, IN THE ALTERATIVE, TO TRANSFER

i

Case No. 4:11-cv-6636-DMR

1

## TABLE OF AUTHORITIES

2      **Cases**

3

*A. J. Indus., Inc. v. U.S. Dist. Court for Central Dist. of Ca.*,
4      503 F.2d 384 (9th Cir. 1974) ................................................................ 18, 20

5      *Alltrade, Inc. v. Uniweld Prods., Inc.*,
       946 F.2d 622 (9th Cir. 1991) ................................................................ 1, 16, 21
6

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
7      566 F.3d 1012 (Fed. Cir. 2009) ............................................................ passim

8      *Avocent Huntsville Corp. v. Aten Int'l Co.*,
       552 F.3d 1324 (Fed. Cir. 2008) ............................................................ passim
9

10     *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
       223 F.3d 1082 (9th Cir. 2000) ................................................................ 9
11

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
12     444 F.3d 1356 (Fed. Cir. 2006) ............................................................ 9

13     *Burger King v. Rudzewicz*,
       471 U.S. 462 (1985) ................................................................................ 6
14

*Chan v. Soc'y Expeditions, Inc.*,
15     39 F.3d 1398 (9th Cir. 1994) ................................................................ 11

16     *CollegeSource, Inc. v. AcademyOne, Inc.*,
       653 F.3d 1066 (9th Cir. 2011) ................................................................ 8
17

18     *Cont'l Grain Co. v. The FBL-585*,
       364 U.S. 19 (1960) ................................................................................ 18, 20
19

20     *Doe, I v. Unocal Corp.*,
       248 F.3d 915 (9th Cir. 2001) ................................................................ 10, 11, 13
21

*Elecs. for Imaging, Inc. v. Tesseron, Ltd.*,
22     No. C 07-05534 CRB, 2008 WL 276567 (N.D. Cal. Jan. 29, 2008) ................................ 19

23     *ExxonMobil Oil Corp. v. Nicoletti Oil, Inc.*,
       713 F. Supp. 2d 1105 (E.D. Cal. 2010) ................................................................ 17
24

*Frontline Processing Corp. v. First State Bank of Eldorado*,
25     389 F. Appx. 748 (9th Cir. 2010) ................................................................ 17

26

27

*Genentech v. Eli Lilly & Co.*,
   998 F.2d 931 (Fed. Cir. 1993) .................................................................................... 16, 21

*Girafa.com, Inc. v. Alexa Internet, Inc.*,
   No. C-08-02745 RMW, 2008 WL 4500858 (N.D. Cal. Oct. 6, 2008) ................................. 21

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
   No. 07-CV-06222, 2008 WL 1991094 (N.D. Cal. May 5, 2008)......................................... 15

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ................................................................................... 10, 11

*Heartland Payment Sys., Inc. v. Verifone Israel Ltd.*,
   No. 10-CV-0654, 2010 WL 1662478 (N.D. Cal. Apr. 22, 2010)....................................... 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)............................................................................................... 6, 8, 12

*Hildebrand v. Steck Mfg. Co.*,
   279 F.3d 1351 (Fed. Cir. 2002) ..................................................................................... 7

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   No. 09-MD-2087-BTM, 2011 WL 3812663 (S.D. Cal. Aug. 29, 2011) ........................... 13

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) ..................................................................................... 18

*In re Volkswagen of Am., Inc.*,
   566 F.3d 1349 (Fed. Cir. 2009) ..................................................................................... 20

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
   605 F. Supp. 2d 1118 (D. Nev. 2009)............................................................................ 12

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................................... 6

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
   544 F. Supp. 2d 949 (N.D. Cal. 2008).......................................................................... 16

*Intuitive Surgical, Inc. v. Cal. Inst. of Tech.*,
   No. 07-CV-63-CW, 2007 WL 1150787 (N.D. Cal. Apr. 18, 2007) ............................... 15, 16

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ..................................................................................... 19

*Meru Networks, Inc. v. Extricom Ltd.*,
   No. 10-CV-02021, 2010 WL 3464315 (N.D. Cal. Aug. 31, 2010) ...................................... 16

*Microchip Techs., Inc. v. United Module Corp.,*
   No. 10-CV-4241-LHK, 2011 WL 2669627 (N.D. Cal. Jul. 7, 2011) ................ 1, 16, 17, 19

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
   678 F.2d 93 (9th Cir. 1982) ................................................................................... 15

*Radio Sys. Corp. v. Accession, Inc.,*
   638 F.3d 785 (Fed. Cir. 2011) ................................................................................. 7

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
   148 F.3d 1355 (Fed. Cir. 1998) .......................................................... 7, 13, 14

*Regents of the Univ. of Cal. v. Eli Lilly & Co.,*
   119 F.3d 1559 (Fed. Cir. 1997) .............................................................................. 19

*Remy Inc. v. CIF Lic., LLC,*
   No. 06-CV-785-GMS-MPT, 2008 WL 2358963 (D. Del. Jun. 9, 2008) ........................... 17

*Round Rock Research, LLC v. Acer Inc.,*
   No. 11-CV-977-RGA (D. Del.) ........................................................................... 4, 18

*Round Rock Research, LLC v. ASUSTeK Computer Inc.,*
   No. 11-CV-978-RGA (D. Del.) ............................................................................. 1, 4

*Round Rock Research, LLC v. Dell Inc.,*
   No. 11-CV-976-RGA (D. Del.) ........................................................................... 4, 18

*Round Rock Research, LLC v. Lenovo Grp. Ltd.,*
   No. 11-CV-1011-RGA (D. Del.) ......................................................................... 4, 18

*SanDisk Corp. v. Round Rock Research, LLC,*
   No. 3:11-CV-5243-RS (N.D. Cal.) ........................................................................... 12

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) .............................................................................. 6, 8

*Sher v. Johnson,*
   911 F.2d 1357 (9th Cir.1990) ................................................................................. 6

*Wells Fargo & Co. v. Wells Fargo Express Co.,*
   556 F.2d 406 (9th Cir. 1977) ................................................................................. 10

*World–Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980) ................................................................................................ 6

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.,*
   802 F. Supp. 2d 1078 (N.D. Cal. 2011) .................................................................. 14

**Statutes**

28 U.S.C. § 1404 ................................................................................ 17, 18, 19, 21

1   PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 12 and

2   Civil L.R. 7-2, Defendant Round Rock Research LLC ("Round Rock") respectfully moves to

3   dismiss ASUSTeK Computer Inc. ("ASUSTeK") and ASUS Computer International, Inc.'s

4   ("ACI") Complaint For Declaratory Judgment Of Patent Non-Infringement And Invalidity

5   (the "Complaint") under Federal Rule of Civil Procedure 12(b)(2) for lack of personal

6   jurisdiction. Round Rock also moves to dismiss the Complaint under the "first-to-file" rule

7   set forth in *Microchip Techs., Inc. v. United Module Corp.*, No. 10-CV-4241-LHK, 2011 WL

8   2669627 (N.D. Cal. Jul. 7, 2011) and *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th

9   Cir. 1991) as all of the patents addressed in the Complaint are already at issue between the

10  parties in an earlier-filed infringement action pending in the District of Delaware. In the

11  alternative, under the same authorities, Round Rock further moves to transfer this action to the

12  District of Delaware, or to stay it pending a venue decision from the Delaware Court.

13  This motion will be heard on March 22, 2012 at 11:00 a.m., or as soon thereafter as the

14  matter can be heard by the Honorable Donna M. Ryu of the above-titled Court.

15  Round Rock bases its motion on the memorandum of points and authorities below, the

16  supporting declarations filed concurrently herewith, all pleadings, exhibits and papers on file

17  in this action, and any other matters properly before the Court.

18  **I.    INTRODUCTION**

19  As detailed below, Round Rock is a Delaware limited liability company that has no

20  employees, offices, bank accounts, or other physical presence in California. Despite

21  plaintiffs' allegations, Round Rock is not subject to either general or specific jurisdiction here.

22  Moreover, even if that were not the case, the Court should dismiss this action in favor of the

23  first-filed action brought by Round Rock in the United States Court for the District of

24  Delaware. *See Round Rock Research, LLC v. ASUSTeK Computer Inc.*, No. 11-CV-978-RGA

25  (D. Del.) (the "Delaware Action"). The Delaware Action, filed months ago in October 2011,

26  alleges that plaintiffs infringe the same patents at issue here, and will involve the same issues

27

1   of fact and law. Plaintiffs concede that the Delaware Action was filed first, involves the same

2   issues of infringement, and concerns the same patentee and alleged infringers. Accordingly,

3   the Court should apply well-established law to dismiss plaintiffs' complaint for lack of

4   declaratory judgment jurisdiction under the "first-to-file" rule.

5           In the alternative, should the Court decline to dismiss this case altogether, the Court

6   should transfer it to Delaware. In addition to the identical patent infringement suit currently

7   pending in the District of Delaware between Round Rock and the plaintiffs here, there are

8   ***three*** additional related cases pending in Delaware that concern the same patents, and

9   presenting common issues of fact and law. Plaintiffs' duplicative filing in this Court only

10  serves to create inefficiencies and reduce judicial economy; if this case is not dismissed,

11  transfer to Delaware will minimize duplicative burdens on the parties, Courts, and third-party

12  witnesses.

13          Because this Court lacks jurisdiction over Round Rock and the Delaware Action

14  involves the same patents and was filed two months earlier than this case, the Court should

15  dismiss plaintiffs' case here. In the absence of dismissal, transfer to Delaware will promote

16  litigation efficiency and judicial economy.

17  **II.     FACTUAL BACKGROUND**

18          Round Rock is a Delaware limited liability company with its principal place of

19  business in Mount Kisco, New York. (deBlasi Decl. ¶ 3.)[1] Round Rock has a portfolio of

20  over four thousand patents and pending patent applications that Round Rock acquired from

21  Micron Technology in 2009. (*Id.* ¶ 5.) Round Rock actively licenses its portfolio to many of

22  the leading technology companies in the world. (*Id.* ¶ 7.) Round Rock's patented inventions

23

24

_____

25  [1] "deBlasi Decl." refers to the Declaration of Gerard A. deBlasi in Support of Defendant's
    Motion to Dismiss, filed concurrently herewith.
26

27

1    span many different technical fields, ranging from semiconductor components and

2    manufacturing processes to consumer products and systems.  (*Id*. ¶ 6.)

3         On March 30, 2011, Round Rock sent plaintiffs ASUSTeK and ACI a letter concerning

4    their unauthorized use of Round Rock's patented technology, and offered to arrange a meeting

5    with ASUSTeK representatives in Taiwan "to discuss these patents and licensing terms."  (*Id*.

6    ¶ 8; Ex. A.)  Round Rock explained that its "intention is to allow ASUSTeK to continue its

7    use of these patents through a license from Round Rock," and that "[t]his matter will be

8    handled by Paul Riley at IPVALUE" ("IPValue").[2]  (deBlasi Decl. ¶ 8; Ex. A.)  On April 14,

9    2011, Mr. Riley sent plaintiffs a letter "to schedule a meeting with [ASUSTeK's patent

10   licensing team] . . . to begin discussions regarding the [Round Rock] patents."  (Riley Decl.

11   ¶ 7; Ex. B.)[3]  On June 9, 2011, Round Rock and ASUSTeK met at ASUSTeK headquarters in

12   Taipei, Taiwan.  (Riley Decl. ¶ 8.)  Round Rock explained its patent portfolio and specifically

13   addressed plaintiffs' infringement of several patents-in-suit.  Subsequently, Round Rock sent

14   additional letters and exemplary claim charts to ASUSTeK executives in Taiwan.  (Riley

15   Decl. ¶¶ 10-12.)  In September 2011, Mr. Riley again travelled to Taiwan to continue those

16   discussions with ASUSTeK.  (Riley Decl. ¶ 11.)  Despite Round Rock's efforts, ASUSTeK

17   continues to use Round Rock's patented technology without a license.  At no time did Round

18   Rock or any representative of Round Rock visit ACI's headquarters in Fremont, California.

19   (Riley Decl. ¶ 13; deBlasi Decl. ¶ 13.)

20        Given plaintiffs' continued infringement in the absence of a license, on October 14,

21   2011, Round Rock filed a patent infringement action in the District of Delaware seeking

22

23   ─────────────────────
     [2] IPValue Management, Inc. ("IPValue") is an independent Delaware corporation hired by
24   Round Rock, among others, to assist owners of intellectual property commercialize their IP
     assets.  (Riley Decl. ¶ 3; deBlasi Decl. ¶¶ 9-11.)
25   [3] "Riley Decl." refers to the Declaration of Paul J. Riley in Support of Defendant's Motion to
     Dismiss, filed concurrently herewith.
26

27   ROUND ROCK RESEARCH'S MOTION TO DISMISS        3              Case No. 4:11-cv-6636-DMR
     PLAINTIFFS'   COMPLAINT   FOR   DECLARTORY
28   JUDGMENT OR, IN THE ALTERATIVE, TO TRANSFER

damages for plaintiffs' infringement of U.S. Patent Nos. 5,255,109; 5,787,174; 5,938,794; 5,991,843; 6,002,613; 7,101,727; 7,138,823; 7,285,979; and 7,389,369. *Round Rock Research, LLC v. ASUSTeK Computer Inc.*, 11-CV-978-RGA (D. Del.) (Ex. C, ¶ 4.). On December 6, 2011 Round Rock amended its Delaware complaint to add an additional patent-in-suit, U.S. Patent No. 7,336,531. (Ex. D.) Thus, the Delaware Action concerns ***exactly the same patents*** that plaintiffs brought to this Court more than two months later. (*Compare* D.I. 1, ¶ 21 *with* Ex. D, ¶ 4.) Highlighting the inefficiency of plaintiffs' strategy, there are also three related actions in Delaware that assert the same patents against similar computers made by other personal computer and consumer technology companies. Like the Delaware Action, all of those cases are pending before Judge Richard Andrews in Delaware. *See Round Rock Research, LLC v. Dell Inc.*, No. 11-CV-976-RGA (D. Del.); *Round Rock Research, LLC v. Acer Inc.*, No. 11-CV-977-RGA (D. Del.); *Round Rock Research, LLC v. Lenovo Grp. Ltd.*, No. 11-CV-1011-RGA (D. Del.) (collectively, the "Related Delaware Actions").[4]

Rather than answer Round Rock's well-pled Delaware complaint, plaintiffs first sought several months of extensions in which to respond. Ultimately, instead of answering that complaint, they moved to dismiss that action, or to transfer it to the Northern District of California. The same day, more than two months after Round Rock's original Delaware complaint, plaintiffs filed their declaratory judgment here (D.I. 1), seeking a declaration of non-infringement, invalidity, and unenforceability of the same patents at issue in the Delaware

---

[4] The Related Actions all concern the various defendants' infringement of U.S. Patent Nos. 5,255,109; 5,787,174; 5,938,794; 5,991,843; 6,002,613; 7,138,823; 7,285,979; and 7,389,369. Round Rock has also asserted U.S. Patent No. 7,101,727 against Dell and U.S. Patent No. 7,336,531 against Acer.

Action. Plaintiffs also make state-law indemnification claims against third-parties Samsung and AMI.[5] (D.I. 1, ¶ 57.) Plaintiffs did not serve their complaint until January 10, 2012.

Plaintiffs contend that this Court has personal jurisdiction over Round Rock "because the cause of action arises directly from Round Rock's contacts with California." (D.I. 1, ¶ 14.) But Round Rock has no such contacts. Round Rock is a Delaware corporation without offices, employees, bank accounts, or any other physical presence in California; it has never been licensed to do business in California; and never met plaintiffs in their California offices. (deBlasi Decl. ¶¶ 4, 13.) After Round Rock's attempts to resolve plaintiffs' infringement proved fruitless, Round Rock filed suit in its home state, where three other related cases will also address common issues of fact and law.

## III.    ROUND ROCK IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA.

### A.    Legal Standards.

Under applicable Federal Circuit law, plaintiffs must make a prima facie showing of personal jurisdiction. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328-29 (Fed. Cir. 2008). The existence of jurisdiction (or lack thereof) depends on two inquiries: (1) whether the forum state's long-arm statute extends to the defendant; and (2) whether the assertion of personal jurisdiction would violate due process. *See id.* at 1329; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). "[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Autogenomics*, 566 F.3d at 1017.

---

[5] According to the Complaint, plaintiffs' notices to alleged indemnitors Samsung and AMI only cover six of the ten patents-in-suit. (D.I. 1, ¶¶ 39, 42.) The Complaint is silent with regard to the remaining four patents-in-suit.

Constitutional due process is satisfied only if sufficient minimum contacts exist between the defendant and the forum state to satisfy "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). That requirement ensures that "defendant's 'conduct and connection with the forum State must be such that the defendant should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The requisite contacts are present "where the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations' between himself and residents of the forum." *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (internal citations omitted). Mere random, fortuitous, or attenuated connections with the forum state fall short of the minimum contacts threshold. *Id.* at 475.

If the requirements of due process are met, personal jurisdiction may be either "general" or "specific." *Avocent*, 552 F.3d at 1330. General jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state. . . .'" *Autogenomics*, 566 F.3d at 1017. Such continuous and systematic contacts must "'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.* Specific jurisdiction, on the other hand, must "arise out of or relate to the cause of action." *Autogenomics*, 566 F.3d at 1017. Specific personal jurisdiction exists when a defendant purposefully directs activities at residents of the forum and the litigation results from injuries arising out of or related to those activities. *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Avocent*, 552 F.3d at 1330.

In a declaratory judgment action for non-infringement and/or invalidity, the relevant jurisdictional inquiry is the extent that the defendant patentee purposefully directed such

enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities. *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (citing *Avocent*, 552 F.3d at 1332). Only the patentee's activities that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction. *Id.* But the Federal Circuit has repeatedly held that contacts directed towards the forum related to informing others of a patentee's patent rights—such as those here—cannot subject the patentee to personal jurisdiction for a declaratory judgment action in that forum. *See, e.g.*, *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum.").

**B.      Round Rock Is Not Subject To Specific Personal Jurisdiction In California.**

Here, plaintiffs rest their jurisdiction claim on two letters Round Rock sent from New Jersey to ASUSTeK and its wholly-owned subsidiary. (D.I. 1, ¶¶ 14-15.) Plaintiffs allege no California activity; in fact Round Rock has had no contact with plaintiffs in California. (deBlasi Decl. ¶ 13.) Under controlling Federal Circuit law, letters apprising a corporation of infringement do not subject the patentee to personal jurisdiction in that entity's forum. *See e.g., Red Wing Shoe*, 148 F.3d at 1360-61; *Autogenomics*, 566 F.3d at 1015, 1021 (no personal jurisdiction despite sending assertion letters to the alleged infringer in California followed by a personal meeting in California regarding the assertion); *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002) ("Fairness and reasonableness demand that a patentee be free to inform a party who happens to be located in a particular forum of suspected infringement without the risk of being subjected to a law suit in that forum."); *Radio Sys.*, 638 F.3d at 789 ("[O]rdinary cease-and-desist notices sent by a patentee to an alleged infringing party in a different state are not sufficient to subject the patentee to specific jurisdiction in that

1   state.").  Instead, in order to support specific jurisdiction, "there must be 'other activities'

2   directed at the forum *and related to the cause of action* besides the letters threatening an

3   infringement suit.'"  *Avocent*, 552 F.3d at 1333 (citation omitted) (emphasis in original).

4   Round Rock has conducted no such "other activities," nor have plaintiffs pled any.

5   Accordingly, specific jurisdiction does not exist here.

6         **C.**      **Round Rock Is Not Subject To General Personal Jurisdiction In**

7                 **California.**

8        Nor is Round Rock subject to "general" personal jurisdiction in California.  General

9   jurisdiction exists only if a defendant has such "continuous and systematic" contacts with the

10   forum state that they "approximate physical presence" in the state.  *See Autogenomics*, 566

11   F.3d at 1017; *Schwarzenegger*, 374 F.3d at 801.  Such pervasive contacts may include

12   maintaining an office in the forum state, having employees in the forum state, having bank

13   accounts in the forum state, or selling products in the forum state.  *Helicopteros Nacionales de*

14   *Colombia*, 446 U.S. at 415; *see CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066,

15   1074 (9th Cir. 2011) (finding no general jurisdiction where defendant had no offices or staff

16   in California, was not registered to do business in California, had no registered agent for

17   service of process in California, and paid no California taxes).  Plaintiffs make no attempt to

18   establish such continuous and systematic contacts by Round Rock; on the contrary, they

19   allege only minimum contacts.[6]  (D.I. 1, ¶ 16.)

20

21

22   [6] Though plaintiffs also assert that, "upon information and belief, Round Rock's employees …

23   have traveled to Apple's headquarters in California," and that Round Rock licensed various
other companies that conduct business in California, (D.I. 1 ¶ 18), those allegations fall far

24   short of establishing continuous and systematic activities that "approximate physical
presence" in the state.  Schwarzenegger, 374 F.3d at 801.  Instead, such "sporadic and

25   insubstantial contacts," even if proven, are not sufficient to establish general jurisdiction over
Round Rock.  *Autogenomics*, 566 F.3d at 1017.

26

27   

28

1        In fact, Round Rock has no such continuous and systematic contacts with California.

2    Round Rock is not a California corporation.  Round Rock has never been licensed to do

3    business in California.  (deBlasi Decl. ¶ 4.)  Round Rock does not sell products in California.

4    And Round Rock has never maintained any office, employees, bank accounts, or other

5    physical presence in California.  (*Id.*)

6        Finally, plaintiffs assert that Round Rock's contacts and non-exclusive patent license

7    agreements with various companies in California justify the Court's exercise of general

8    personal jurisdiction over Round Rock.  (D.I. 1, ¶ 18.)  But as before, controlling Federal

9    Circuit law establishes that those limited activities do not constitute the "continuous and

10    systematic" contacts required to support the exercise of general personal jurisdiction.  *See*

11    *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc*., 444 F.3d 1356, 1366 (Fed. Cir. 2006)

12    ("[A] defendant may not be subjected to personal jurisdiction . . . where the defendant has

13    successfully licensed the patent in the forum state, even to multiple non-exclusive licensees,

14    but does not, for example, exercise control over the licensees' sales activities and, instead, has

15    no dealings with those licensees beyond the receipt of royalty income.").  Indeed, those

16    contacts "constitute doing business ***with*** California, but do not constitute doing business ***in***

17    California."  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir.

18    2000) ("[E]ngaging in commerce with residents of the forum state is not in and of itself the

19    kind of activity that approximates physical presence within the state's borders.").  Thus, the

20    alleged third-party licenses cannot support jurisdiction over Round Rock in this Court.[7]

21

22

23

24    _____

[7] Similarly, for the reasons stated in the next section, IPValue's activities in connection with
25    Round Rock licensees also cannot give rise to general or specific jurisdiction over Round
26    Rock.

27    ROUND ROCK RESEARCH'S MOTION TO DISMISS       9        Case No. 4:11-cv-6636-DMR
       PLAINTIFFS' COMPLAINT FOR DECLARATORY
28    JUDGMENT OR, IN THE ALTERATIVE, TO TRANSFER

**D.      Third-Party Activities In The District Cannot Be Imputed To Round Rock And, In Any Event, Are Not Sufficient To Confer General Or Specific Jurisdiction Over Round Rock.**

Perhaps recognizing their tenuous jurisdiction assertions, plaintiffs' jurisdictional contentions rely on allegations of Round Rock's contacts with its limited agent, IPValue. (D.I. 1, ¶¶ 14-18.)  But under applicable law, those contacts fall short of satisfying the exacting standard for establishing either general or specific jurisdiction over Round Rock here.

**1.      Third Party IPValue's Contacts With California Do Not Subject Round Rock To General Personal Jurisdiction In California.**

Plaintiffs contend that personal jurisdiction exists over ***Round Rock*** because of various activities of ***IPValue***, an independent Delaware corporation.  But IPValue's presence or activities in California—to whatever extent they may exist—cannot properly be imputed to Round Rock to invoke general jurisdiction, and are insufficient as a matter of law to confer specific jurisdiction.  To establish general personal jurisdiction by imputing the unrelated activities of a third-party, a plaintiff must demonstrate that:  (i) the third-party is a "general" rather than "limited" agent; or (ii) the defendant exercises sufficient control over the third-party's internal affairs such that they are not truly independent entities.  *See, e.g., Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 422 (9th Cir. 1977) (finding that a third party must be a "general agent" rather than a special agent to impute its contacts to the principal for purposes of demonstrating general jurisdiction); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (finding that a third-party's contacts may be imputed to the defendant only if it is the defendant's alter ego or "general agent."); *Doe, I v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001).  Plaintiffs' alleged jurisdictional facts do not satisfy either prong of that test; accordingly, plaintiffs cannot establish jurisdiction over Round Rock based on IPValue's unrelated presence in California.

a.    **IPValue Is Not Round Rock's General Agent.**

Although Round Rock appointed IPValue as its agent to assist with commercializing Round Rock's intellectual property rights (deBlasi Decl. ¶ 8.), the scope of IPValue's authority is strictly limited—IPValue has no ownership interest in Round Rock or any of Round Rock's patents, and has no authority to enter into any agreements on behalf of Round Rock or to bring any legal action for infringement of any Round Rock patents.  (deBlasi Decl. ¶ 11; Riley Decl. ¶ 6.)  Accordingly, because IPValue is only a limited rather than "general" agent, its contacts with California cannot be properly attributed to Round Rock for purposes of evaluating general personal jurisdiction.  *See, e.g., Harris Rutsky*, 328 F.3d at 1134.

Moreover, IPValue does not perform services for Round Rock in California such that in IPValue's absence, Round Rock would itself perform those same services in California.  To impute the contacts of an alleged general agent to a foreign company, the agent must provide services that "are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."  *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994) (citation omitted); *see also Unocal*, 248 F.3d at 928.  The exercise of general personal jurisdiction is not justified where, as here, the agent's acts have little meaningful connection to the forum state.  *See, e.g.*, *Unocal*, 248 F.3d at 930 ("Moreover, as a multinational energy company, [defendant] could establish other subsidiary holding companies located in some other state or country to hold the stock of the operating companies located in California.  Under these circumstances, it simply cannot be said that [the subsidiaries] are [defendant's] general agents for jurisdictional purposes.").  IPValue's decision to maintain an office in California (among other places) has nothing whatsoever to do with the limited work it performs for Round Rock.  IPValue's work for Round Rock—patent analysis and licensing support—has no geographic nexus to California (or any other jurisdiction).  Rather, that work

1    could be performed anywhere IPValue chose to establish an office.[8]   The fact that IPValue

2    chose to conduct some operations in California is of no special importance to Round Rock,

3    nor is IPValue's location a basis of their client relationship.   In IPValue's absence, Round

4    Rock could undertake such work (or contract with another third party to undertake such work)

5    in any forum without any significant consequence.   *See, e.g., Unocal*, 248 F.3d at 930

6    ("[Defendant] could establish other subsidiary holding companies located in some other state

7    or country . . . ."); *see also In re W. States Wholesale Natural Gas Antitrust Litig.*, 605

8    F. Supp. 2d 1118, 1136 (D. Nev. 2009) ("Plaintiffs have presented no evidence that

9    [subsidiary's activities] in Wisconsin in particular were sufficiently important to [defendant's]

10   business that [defendant] would have performed the sales in Wisconsin itself absent its

11   subsidiary's representation in the forum.").   In these circumstances, the limited agent's

12   California presence is fortuitous and does not create specific personal jurisdiction over the

13   patentee.[9]

14          Accordingly, IPValue's fortuitous presence in California does not substitute for Round

15   Rock's physical presence in the state, and does not give rise to general jurisdiction.   *See, e.g.,*

16   *Unocal*, 248 F.3d at 925; *Helicopteros Nacionales*, 466 U.S. at 417 ("[U]nilateral activity of

17

18   [8] For example, and contrary to plaintiffs' contentions, none of IPValue's licensing executives
19   reside in or are based in California.  (Riley Decl. ¶ 4.)
     [9] Plaintiffs also seek to support their jurisdictional arguments based on IPValue's visit to a
20   *different* California company—SanDisk Corporation—in a wholly *separate and distinct case*
     involving *different* patents and accused products *unrelated* to this action.  (D.I. 1, ¶ 17.)  But
21   for exactly the same reasons, those activities similarly do not confer jurisdiction, general or
     specific, over Round Rock.  First, it cannot confer specific jurisdiction in this case, because
22   plaintiffs' declaratory judgment claims do not arise out of IPValue's visit to SanDisk.
     Second, those activities cannot confer general jurisdiction over Round Rock, unless as
23   discussed below, plaintiffs also establish that IPValue is Round Rock's alter ego or its general
     California agent, which it is not.  Finally, Round Rock has moved to dismiss SanDisk's
24   declaratory judgment complaint for lack of personal jurisdiction for many of the same reasons
     set forth here.  *SanDisk Corp. v. Round Rock Research, LLC*, No. 3:11-CV-5243-RS (N.D.
25   Cal.).
26

27   ROUND ROCK RESEARCH'S MOTION TO DISMISS        12          Case No. 4:11-cv-6636-DMR
     PLAINTIFFS'   COMPLAINT   FOR   DECLARTORY
28   JUDGMENT OR, IN THE ALTERATIVE, TO TRANSFER

1    another party or a third person is not an appropriate consideration when determining whether

2    a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.");

3    *Red Wing Shoe*, 148 F.3d at 1361 ("In simple terms, doing business with a company that does

4    business in Minnesota is not the same as doing business in Minnesota. Indeed, as stated

5    above, the Supreme Court has made clear that contacts resulting from the unilateral activity of

6    another party or third person" are not attributable to a defendant.") (citations omitted).

7              **b.    IPValue Is Not Controlled By Round Rock Nor Is It Round
8                      Rock's "Alter Ego."**

9              IPValue is an independent Delaware company, separate and distinct from its client

10   Round Rock.  Under California law, for IPValue to be considered Round Rock's "alter ego,"

11   there would have to exist "such unity of interest and ownership that the separate personalities

12   [of the two entities] no longer exist."  *Unocal*, 248 F.3d at 926; *see In re Hydroxycut Mktg. &*

13   *Sales Practices Litig.*, No. 09-MD-2087-BTM, 2011 WL 3812663, at *10 (S.D. Cal. Aug. 29,

14   2011) ("The control must go beyond the general executive control that a parent normally

15   exercises over a subsidiary; the control must be on the level of day-to-day operational

16   control.")  But (unlike the relationship between ASUSTeK and its one hundred percent owned

17   American subsidiary ACI), IPValue and Round Rock are neither parent and subsidiary, nor

18   two parts of the same global entity.  Round Rock owns no stock in IPValue, does not share

19   chairmen and executives, does not market the same products, and does not exercise control

20   over IPValue's management.  (*See* deBlasi Decl. ¶ 11.)  Indeed, Round Rock is just one of

21   many entities for whom IPValue performs licensing support services.  Plaintiffs do not—and

22   cannot—otherwise allege any facts that suggest that the two companies do not function as

1   independent entities.[10]   Accordingly, IPValue is not Round Rock's alter ego, and IPValue's

2   acts in California cannot establish general jurisdiction over Round Rock.

3            **2.    IPValue's Alleged Activities Do Not Support Specific Jurisdiction.**

4        Nor do IPValue's activities support *specific* personal jurisdiction over Round Rock.

5   To establish specific jurisdiction, plaintiffs must demonstrate that Round Rock "purposefully

6   directed" its activities at residents of the forum, and that this litigation results from alleged

7   injuries that "arise out of or relate to" those activities.  *Avocent*, 552 F.3d at 1330 (citation

8   omitted).  But IPValue's only contacts with plaintiffs on behalf of Round Rock are of the type

9   that the Federal Circuit has repeatedly held cannot subject the patentee to personal

10  jurisdiction.  *See, e.g., Red Wing Shoe*, 148 F.3d at 1360-61 ("Principles of fair play and

11  substantial justice afford a patentee sufficient latitude to inform others of its patent rights

12  without subjecting itself to jurisdiction in a foreign forum.").

13       Plaintiffs point to two discrete contacts with ACI in California that they claim provide

14  specific jurisdiction over Round Rock in this action: (1) a March 30, 2011 Round Rock letter

15  to ASUSTeK, in Taiwan, and ACI, in California, informing those entities that they infringe

16  certain Round Rock patents and notifying them that IPValue is Round Rock's agent to license

17  those patents, ( D.I. 1, ¶ 14; Ex. A.); and (2) an April 14, 2011 letter from IPValue, on behalf

18  of Round Rock, to ASUSTeK, in Taiwan, and ACI, in California, seeking a meeting with

19  ASUSTeK to discuss a license to the Round Rock patent portfolio. (D.I. 1, ¶ 15; Ex. B.)

20  Those contacts are precisely the sort of contacts that the Federal Circuit has held cannot

21

22  [10] Plaintiffs state that Mr. deBlasi is an officer of Round Rock and a Board member of
23  IPValue.  (D.I. 1, ¶ 14.)  But that fact does not support a finding of general or specific
    personal jurisdiction over Round Rock.  *See, e.g., Zero Motorcycles, Inc. v. Pirelli Tyre*
24  *S.p.A.*, 802 F. Supp. 2d 1078, 1094 (N.D. Cal. 2011) (finding that an overlap of a board
    member between two entities is insufficient to establish the alter ego or agency test).  Mr.
25  deBlasi does not oversee day-to-day operations at IPValue.  Nor does he control the
    geographic locations of their activities.  (deBlasi Decl. ¶ 9.)
26

27  ROUND ROCK RESEARCH'S MOTION TO DISMISS            14            Case No. 4:11-cv-6636-DMR
    PLAINTIFFS'   COMPLAINT   FOR   DECLARATORY
28  JUDGMENT OR, IN THE ALTERATIVE, TO TRANSFER

1   subject a patent owner to personal jurisdiction.  *See, e.g., Autogenomics*, 566 F.3d at 1021

2   (finding no personal jurisdiction where patentee sent assertion letters to the alleged infringer

3   in California followed by a personal meeting in California regarding the assertion).  All other

4   contacts between IPValue and plaintiffs occurred in Taiwan, in meetings between IPValue

5   and parent company ASUSTeK.  (Riley Decl. ¶ 13.)  And no one from IPValue or Round

6   Rock ever visited ACI headquarters in California.  (Riley Decl. ¶ 13; deBlasi Decl. ¶ 13.)

7   Accordingly, IPValue's two letters to ACI cannot confer specific personal jurisdiction over

8   Round Rock here.

9   **IV.     THE COURT SHOULD DISMISS THIS ACTION UNDER THE FIRST-TO-**
   **FILE RULE.**

10

11          Plaintiffs seek a declaratory judgment of non-infringement, invalidity, and

12   unenforceability of ***exactly the same*** ten patents that are already the subject of a first-filed

13   action in Delaware.  Because that first-filed action involves the same issues, and the same

14   parties with regard to those issues, the instant action should be dismissed, transferred to

15   Delaware, or stayed until the Delaware Court resolves any venue issues.

16          **A.     Legal Standards.**

17          The first-to-file rule "is a generally recognized doctrine of federal comity which permits a

18   district court to decline jurisdiction over an action when a complaint involving the same parties

19   and issues has already been filed in another district."  *Intuitive Surgical, Inc. v. Cal. Inst. of Tech.*,

20   No. 07-CV-63-CW, 2007 WL 1150787, at *2 (N.D. Cal. Apr. 18, 2007) (quoting *Pacesetter Sys.,*

21   *Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-5 (9th Cir. 1982)).  When two different courts preside

22   over substantially identical actions, the court of the later-filed action "should defer to the

23   jurisdiction of the court of the first-filed action by either dismissing, staying, or transferring the

24   later-filed suit."  *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. 07-CV-06222, 2008 WL 1991094, at *2

25   (N.D. Cal. May 5, 2008).  Courts enforce the "first-to-file" rule to promote judicial efficiency and

26   prevent the risk of inconsistent decisions that would arise from multiple litigations of identical

27

28

claims.  *Meru Networks, Inc. v. Extricom Ltd.*, No. 10-CV-02021, 2010 WL 3464315, *1 (N.D. Cal. Aug. 31, 2010); *see Alltrade*, 946 F.2d at 625 ("The first-to-file rule was developed to 'serve[ ] the purpose of promoting efficiency.'"); *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993) (applying the first-to-file rule to patent disputes).  Three factors apply when applying the first-to-file rule:  "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues."  *Intuitive Surgical*, 2007 WL 1150787, at *2 (citation omitted).

### B.    All Of The First-To-File Factors Favor Dismissing This Action Or Transferring It To Delaware.

In the first-filed Delaware Action, Round Rock has alleged that plaintiffs infringe the same ten Round Rock patents at issue here.  Plaintiffs concede that the Delaware Action was filed months before this case, and concerns the same patents.  (D.I. 1, ¶¶ 29, 31.)  Accordingly, there is no dispute that (1) the Delaware Action was filed first; and (2) both cases involve the same patents.

The remaining first-to-file factor—similarity of the parties—is also met here.  Both actions involve ASUSTeK, ACI, and Round Rock, with the only non-overlapping parties being two purported indemnitors of the plaintiffs.  But the addition of Samsung and AMI to this action does not void the application of the first-to-file rule where the parties involved are "substantially similar."  *Microchip Tech., Inc. v. United Module Corp.*, Nos. CV-10-04241-LHK, CV-10-05196-LHK, CV-10-05290-LHK, CV-11-CV-430-LHK, 2011 WL 2669627, at *3 (N.D. Cal. Jul. 7, 2011); *see Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008) ("[E]xact identity is not required to satisfy the first-to-file rule. The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters.")  In a recent, similar case, this Court dismissed a second-filed declaratory judgment action that involved the same patentee and accused infringer in the first-filed action, despite the presence of two additional parties in the

1    later-filed action, concluding that the parties involved were substantially similar.  *Microchip*

2    *Tech.*, 2011 WL 2669627 at *3-*4.

3            The same result applies here.  Plaintiffs' indemnity claims against Samsung and AMI—

4    whatever they may be—are independent and distinct from the core issues of the dispute between

5    Round Rock and plaintiffs.  Not only are the alleged indemnity claims substantively distinct from

6    the infringement claims—alleged indemnitors are not necessary parties to the litigation regarding

7    plaintiffs' infringement—but those indemnity claims themselves do not even arise until after

8    liability is settled.  *See, e.g.*, *Frontline Processing Corp. v. First State Bank of Eldorado*, 389

9    F. Appx. 748, 754 (9th Cir. 2010) (finding indemnification claims "unripe" because liability

10   on underlying tort had not been adjudicated); *ExxonMobil Oil Corp. v. Nicoletti Oil, Inc.*, 713

11   F. Supp. 2d 1105, 1113 (E.D. Cal. 2010) (under California law indemnification claims accrue

12   after the resolution of the underlying tort); *Remy Inc. v. CIF Lic., LLC*, No. 06-CV-785-GMS-

13   MPT, 2008 WL 2358963, at *2-*3 (D. Del. Jun. 9, 2008) (holding that there was sufficient

14   similarity of issues to apply the first-to-file despite the presence of alleged indemnitors and

15   indemnification claims in the later-filed suit).  Accordingly, plaintiffs' indemnification

16   allegations do not alter the first-to-file analysis.

17           Because all three threshold factors are satisfied, the first-to-file rule applies in this case

18   and plaintiffs' second-filed, duplicative suit should be dismissed.[11]

19

20

21   ———————————————

22   [11] None of the recognized exceptions to the first-to-file rule—the customer suit exception, bad
     faith, anticipatory suit, or forum shopping—apply in this case.  Round Rock is a Delaware

23   corporation that filed an affirmative infringement case on its home turf.  Plaintiffs do not and
     cannot credibly allege that the Delaware Action was filed in bad faith, in anticipation of suit,

24   or through improper forum shopping.  Nor was plaintiffs' retaliatory, duplicative declaratory
     action filed to rescue a mere reseller of infringing goods in the first-filed action: Round Rock

25   named both plaintiffs directly in its first-filed suit.  *See Microchip Tech.*, 2011 WL 2669627, at
     *5-*6.

26

27   ROUND ROCK RESEARCH'S MOTION TO DISMISS            17                    Case No. 4:11-cv-6636-DMR
     PLAINTIFFS'   COMPLAINT   FOR   DECLARTORY
28   JUDGMENT OR, IN THE ALTERATIVE, TO TRANSFER

**C.    Alternatively, This Case Should Be Transferred To The District Of Delaware Or Stayed To Properly Allow The First-Filed Court To Resolve Venue Disputes.**

Should this Court decide not to dismiss plaintiffs' claims outright, it should instead transfer the case to Delaware under 28 U.S.C. § 1404(a).  As stated above, the same principal parties, issues, products, and patents are also at issue in the first-filed Delaware action. Moreover, three other related actions involving the same patents, the same categories of accused products, and substantially the same issues of law and fact are pending in Delaware in front of the same district court judge.  *See Round Rock Research, LLC v. Dell Inc.*, 11-CV-976-RGA (D. Del.); *Round Rock Research, LLC v. Acer Inc.*, 11-CV-977-RGA (D. Del.); *Round Rock Research, LLC v. Lenovo Grp., Ltd.*, 11-CV-1011-RGA (D. Del.).  Keeping this entire dispute in Delaware would avoid duplicative proceedings, will promote judicial economy, and conserve judicial resources.  *See, e.g.*, *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent."); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (holding that the trial court properly afforded substantial weight to judicial economy in a §1404(a) transfer analysis where "there is co-pending litigation before the trial court involving the same patent and underlying technology"); *A. J. Indus., Inc. v. U.S. Dist. Court for Central Dist. of Ca.*, 503 F.2d 384, 389 (9th Cir. 1974) ("[T]he pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties").  Accordingly, this case belongs in Delaware.

A District Court may transfer an action under 28 U.S.C. § 1404(a) provided:  (1) "the district to which the defendants seek to have the action transferred is one in which the action 'might have been brought'"; and that (2) "the transfer [is] for the convenience of parties and witnesses, and in the interest of justice." *Elecs. for Imaging, Inc. v. Tesseron, Ltd.*, No. C 07-

05534 CRB, 2008 WL 276567, *1 (N.D. Cal. Jan. 29, 2008).   Courts have consistently

recognized that judicial economy is ***the most important consideration*** in a transfer analysis.

*Vistaprint*, 628 F.3d at 1346 (holding that the trial court properly afforded substantial weight

to judicial economy in a §1404(a) transfer analysis where "there is co-pending litigation

before the trial court involving the same patent and underlying technology"); *Regents of the*

*Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("Consideration of the

interest of justice, which includes judicial economy, may be determinative to a particular

transfer motion, even if the convenience of the parties and witnesses might call for a different

result.") (internal quotations omitted).   Other relevant factors in assessing convenience of the

parties and witnesses include:   "(1) the location where the relevant agreements were

negotiated and executed, (2) the state that is most familiar with the governing law, (3) the

plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts

relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs

of litigation in the two forums, (7) the availability of compulsory process to compel

attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

### 1.   The Plaintiffs Could Have Filed Declaratory Judgment Claims In The District Of Delaware.

As a Delaware corporation, Round Rock Research is subject to personal jurisdiction in

Delaware.   As such, plaintiffs could have brought their declaratory judgment claims of non-

infringement, invalidity, and unenforceability in Delaware.[12]

---

[12] Plaintiffs also could have joined—and still may join—Samsung and AMI in the Delaware action and seek indemnification in that forum, though this Court need not reach that issue in order to transfer the case to Delaware under the first-to-file rule.  *Microchip Tech*, 2011 WL 2669627 at *7–*8.

2.     **Judicial Economy Favors Transfer To Delaware.**

The Delaware Action includes identical claims of infringement of the same patents-in-suit, and it, along with the other three related cases, will proceed in Delaware regardless of this Court's ruling.  As a result, transfer of this action to Delaware would avoid duplicative proceedings, inconsistent rulings, and conserve substantial judicial resources.

The Supreme Court has long recognized the inefficiencies of maintaining two separate litigations involving overlapping issues.  *Cont'l Grain*, 364 U.S. at 26 ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent.").  Likewise, in the context of patent litigation, the Federal Circuit has given "paramount consideration" to "the existence of multiple lawsuits involving the same issues" when determining whether a transfer is in the interest of justice.  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

Here, all of the patents-in-suit are already at issue between Round Rock and the plaintiffs in the District of Delaware.  The meaning, scope, and validity of the claims of the patents-in-suit will be at the heart of the Delaware Action.  Plaintiffs further acknowledge that the Related Delaware Actions involve the same patents and issues.  (D.I. 1, ¶ 30.)  If two separate litigations are maintained, the same evidence, arguments, and issues will be raised in both actions.  On the other hand, should the Court choose not to dismiss the case outright, transfer of the action will promote both judicial economy and convenience interests.  *See A. J. Indus.*, 503 F.2d at 389 ("[T]he pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties").

Indeed, the burden of litigation—for the parties, Courts and witnesses—would be vastly increased if plaintiffs' declaratory judgment claims are allowed to go forward, because the Delaware Action and the Related Delaware Actions will proceed in Delaware in parallel,

1  resulting in duplicative and overlapping decisions regarding the scope and validity of the same

2  patent claims, duplicative claim construction briefing and hearings, and resolve similar

3  infringement issues stemming from the very similar standards-compliant infringing computer

4  systems, all of which can be avoided with transfer.

5           **3.    The Convenience Of Witnesses, Particularly Non-Party Witnesses,
                Strongly Favors Transferring This Action To Delaware.**

6

7           Maintenance of two separate actions in this Court and Delaware will force the parties

8  to litigate the identical issues twice and pose significant time, expense, and travel burdens on

9  potential witnesses.  Transfer will avoid that risk.  As described above, duplicative suits leads

10  not only to judicial inefficiencies but also additional burden on the parties.  For example,

11  documents and evidence will have to be produced twice by the parties in separate Courts, and

12  the same arguments will need to be heard in both Courts.  As such, convenience of the parties

13  weighs in favor of transfer.

14           **D.    At A Minimum, This Court Should Stay This Action To Allow The
                Delaware Court To Resolve Venue Issues.**

15

16           Under California law, courts have consistently held that where a determination of

17  § 1404(a) factors is required, ***that balancing inquiry should normally be addressed by the first-***

18  ***filed court***—in this case the Delaware Court.  *Alltrade*, 946 F.3d at 628; *see, e.g.*, *Genentech,*

19  *Inc. v. GlaxoSmithKline LLC*, No. 5:10-CV-4255-JF; 2010 WL 4923954, at *3-4 (N.D. Cal. Dec.

20  1, 2010) (same); *Heartland Payment Sys., Inc. v. Verifone Israel Ltd.*, No. 10-CV-0654, 2010

21  WL 1662478, at *4 (N.D. Cal. Apr. 22, 2010) ("The court with the first-filed action should

22  normally weigh the balance of convenience."); *Girafa.com, Inc. v. Alexa Internet, Inc.*, No. C-

23  08-02745 RMW, 2008 WL 4500858, *8 (N.D. Cal. Oct. 6, 2008) ("The analysis to determine

24  which court is more convenient should be performed by the first-filed court."); *Meru*, 2010 WL

25  3464315, *2 ("[T]he bright line rule allowing the court in the first-filed action to make the

26  convenience determination comports with the policy of judicial economy that the firstto-file [*sic*]

27  ROUND ROCK RESEARCH'S MOTION TO DISMISS              21              Case No. 4:11-cv-6636-DMR
    PLAINTIFFS' COMPLAINT FOR DECLARTORY
28  JUDGMENT OR, IN THE ALTERATIVE, TO TRANSFER

1    rule is intended to serve.").   Therefore, should this Court decide not to dismiss plaintiffs'

2    retaliatory declaratory judgment suit altogether, this action should be stayed to permit the

3    Delaware Court to determine venue.

4    **V.      CONCLUSION**

5          For all of the foregoing reasons, Round Rock respectfully request that this Court enter

6    an order dismissing all claims in the declaratory judgment complaint or, in the alternative,

7    transferring this action to the United States District Court for the District of Delaware, or

8    staying this action until that Court rules on the identical issues.

9

10

11

12   Dated:  January 31, 2012                          Respectfully submitted,

13                                                     BLACK CHANG & HAMILL LLP

14

15                                            By:   _/s/ Peter H. Chang_

16                                                  *Attorneys for Defendant*
                                                    *Round Rock Research LLC*
17   *Of Counsel:*

18   DESMARAIS LLP
     Paul A. Bondor
19   pbondor@desmaraisllp.com
     Jonas R. McDavit
20   jmcdavit@desmaraisllp.com
     230 Park Avenue
21   New York, New York  10169
     Telephone:  212-351-3400
22   Facsimile:  212-351-3401

23

24

25

26

27   ROUND ROCK RESEARCH'S MOTION TO DISMISS          22          Case No. 4:11-cv-6636-DMR
     PLAINTIFFS'  COMPLAINT  FOR  DECLARTORY
28   JUDGMENT OR, IN THE ALTERATIVE, TO TRANSFER